## RODRIGUEZ v. VIVONI.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF PORTO RICO.

No. 209. Argued March 14, 1906.—Decided April 2, 1906.

Remote explanations as to the use and meaning of a word will be rejected when the will offers upon its face a different and more obvious one.

The words *sucesion legitima* in the will of a Porto Rican held to mean "issue," and not "lawful heirs."

This court will not consider a claim which was not set up in the bill or in the court below, nor suggested until after the argument in this court.

THE facts are stated in the opinion.

*Mr. Fritz v. Briesen,* with whom were *Mr. Charles M. Boer-man* and *Mr. Stephen M. Hoye* on the brief, for appellant:

The real point in issue, in determining the proper construction of the will, is whether the words "sucesion legitima" used in the thirteenth, the residuary clause of the will, mean "legal issue" or "legal heirs." If the former, this appeal must fail; if the latter, the complainant is entitled to take as the legal heir of her daughter, Felipa Benecia.

The primary and technical meaning of the words "sucesion legitima" is "legal heirs."

As used in the Spanish Codes and law dictionaries the words "sucesion legitima" have a meaning which may be most nearly expressed by the English words "intestate succession." Escriche, Diccionario Razonado de Legislacion y Jurisprudencia, Paris, 1852, tit. "Sucesion legitima;" Pothier, 8 Œuvres (Edited by Bugnet), Paris, 1890, Traité des Successions, 1;

Code of Civil Procedure of 1889 (War Dept. Translation), Art. 912.

See also Civil Code of Porto Rico, 1902 (in Revised Statutes of Porto Rico), §§ 664–666, 886. This Code makes a distinction between legitimate succession, which is that which the law has established in favor of the nearest relatives of the deceased (§ 666 v.) and irregular succession which is that established in favor of certain persons or of the people of Porto Rico in the absence of legal heirs or those instituted by will.

See also Code of Louisiana, New Orleans, 1861, Arts. 871–875, where the same distinction is drawn.

It is a peculiar provision of the civil law that, in view of the fact that an heir is liable for all or a share of the debts of the deceased, he may refuse the inheritance altogether. In such a case, he is considered as not being an heir, and as never having been an heir.

Thus by collocation of ideas the words "sucesion legitima" are used to designate those of the nearest relatives who take the inheritance. See Resolution of June 25, 1895, in Alcubilla, Diccionario de la Administration Española, Madrid, Appendix Volume for 1895, page 795, Tit. "Jurisprudencia Hipotecaria y Notarial." The case is also printed in full in Scaevola, 3 Jurisprudencia del Codigo Civil, Madrid, 1901, page 213. See also Century Dictionary, "Succession."

The words "sucesion legitima" are never used in the Code to designate legitimate issue, except in so far as the "sucesion legitima" goes first to the descendants (Art. 930), and, in the absence of descendants, or of their refusal to take, to the ascendants, and in their absence or refusal to take, to the collateral relatives. If, therefore, a deed or will provides that the property is to go to the "sucesion legitima," then, if there are children, it necessarily means the children. But, if there be no children, it means ascendants; and if there be no ascendants, then it means the collateral relatives.

We have an analogous use of the word "heirs" in our law,

See *Ide* v. *Ide*, 5 Massachusetts, 500; *Gifford* v. *Choate*, 100 Massachusetts, 345; *Heath* v. *Hewitt*, 127 N. Y. 166.

It is the general rule of the Spanish law that wills are to be construed exactly as they read, unless such construction be a ridiculous one. Law 5, Title 33, Partida 7, of the Laws of Las Siete Partidas. This law has been reënacted in the Civil Code, Art. 675.

The law has been construed in a number of decisions of the Supreme Court of Spain, reported in the Jurisprudencia Civil. Sentence of December 20, 1862, vol. 7, No. 315, p. 787; Sentence of December 11, 1865, vol. 12, No. 439, p. 461; Decision of June 21, 1872, vol. 26, No. 204, pp. 15, 16; Sentence of March 3, 1873, vol. 27, No. 108, p. 395.

The same provisions are found in our law of the construction of wills. The plain meaning of the words used in a will is always presumed to be their meaning, and the burden of proof that they are used in another sense is upon the party claiming so. See *Aspden's Estate*, Fed. Cas. No. 589; *Daley* v. *James*, 8 Wheat. 534; *Osborne* v. *Shrieve*, 3 Mason, 391.

It is also invariably so held in the States where the civil law similar to that of Porto Rico is in force, as, for example, in Louisiana and California. *Norris* v. *Hensley*, 27 California, 439, 450; *Sharpe* v. *Kleinberter*, 7 La. Ann. 264.

In construing a will, the words are to be construed according to their natural import, unless the context evidently points out that in the particular instance there should be some other construction. *Sheriff* v. *Brown*, 5 Mackey, 172; *In re Hallet*, 8 Paige, 378; *Puryear* v. *Edmonson*, 4 Heisk, 51. A testator must be presumed to have used words in their ordinary primary sense or meaning. *In re Woodward*, 117 N. Y. 522. All doubts are to be resolved in favor of the testator's having said exactly what he meant. *Cady* v. *Bunn*, 46 N. J. Eq. 131. Where the provisions of the will are clear and simple, no reason exists for taking the testator's words in any other than their natural sense. *Wiley* v. *Lockwood*, 86 N. Y. 301; *Lovett* v. *Buloid*, 3 Barb. Ch. 137. The question in expounding a

will is, not what the testator meant, but what is the meaning of the words used by him. *Barrow's Appeal* (Pa.), 8 Cent. Rep. 132; *Bates* v. *Woodruff*, 123 Illinois, 205.

Provisions relating to fideicommissary substitutions are to be liberally construed, so as to prevent the taking place of the substitution. Pothier, "Traité des Substitution," Works, Paris, 1890, edited by Bugnet, vol. 8, p. 477.

The construction of the words "sucesion legitima" as legal heirs is the one intended by the testator. The will was drawn by a notary public, an officer held in high respect in Porto Rico. and appointed for his knowledge of the law of conveyancing and drafting of wills. The words were therefore used in their technical legal sense.

*Mr. N. B. K. Pettingill,* for appellees, submitted:

Under both the Spanish and American systems the courts will so construe wills, irrespective of the technical meanings of the words used, as to determine and carry out the real intention of a testator. The rule in our own law is firmly fixed. *Robinson* v. *Portland Asylum*, 123 U. S. 707; *Kenaday* v. *Sinnott*, 179 U. S. 616.

There are numerous decisions of the Supreme Court of Spain in which almost the same language is used. *Cayetano Codina* v. *Felipe Codina*, Sentence of June 30, 1866, Jurisprudencia Civil, vol. 14, p. 237; *Romero* v. *Romero*, Sentence of Dec. 10, 1866, Juris. Civ., vol. 14, p. 793.

For meaning of "sucesion legitima" see Dictionary Royal Spanish Academy, p. 932; Lopez, Spanish–English Dictionary, p. 577; Sentence, vol. 61, p. 10, Juris Civ.; Sentence, vol. 51, p. 422, Juris. Civ.

See the American decisions which hold that where the word "heirs" is used by a testator it often is shown by the context to mean "issue" or "descendants." *Randolph* v. *Randolph*, 40 N. J. Eq. 77; *Canfield* v. *Canfield*, 118 Fed. Rep. 1 (C. C. A.); *Abbott* v. *Essex Co.*, 18 How. 202; *Barber* v. *Pittsburg Ry. Co.*, 166 U. S. 83.

To hold that the devise was to each of the eight persons and their "heirs" would destroy the express provision of "fideicomiso" or trust and leave the phrase "con calidad de fideicomiso" useless and ineffective.

It would also leave without meaning the further provision for the mutual benefit of the eight, because a person very seldom dies without "heirs" in the broad sense, and even in that event the Civil Code of Porto Rico, then in force, provided that in default of other heirs the State would inherit. War Department translation, arts. 956, 958.

It would not give due weight and meaning to the use by the testator of the word "legitimate" in connection with the word "sucesion," because in the paragraph in question the word "legitimate" would be superfluous as modifying the general term "heirs," while it becomes important as a limiting word if it modifies "issue."

That these trust provisions under the term "fideicomiso" were common in the Spanish law were recognized as valid when not creating a perpetuity and their meaning and construction well determined, see the Sentencia of the Supreme Court of Spain in *Moya* v. *Moya*, April 22, 1865, Juris. Civ., vol. 11, p. 534.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill for the partition of real estate in which the female plaintiff claims one undivided eighth as heir to her daughter Felipa Benicia, who died an infant without issue. This daughter got her title under the will of Thomas José Ramirez, and the question is whether, in the event which happened, her share went to her mother by descent or to her fellow devisees by the terms of the will. The other devisees all were living at her death. The case was heard upon a plea setting up the foregoing facts, together with the will, and the bill was dismissed. Thereupon the plaintiffs appealed to this court.

The material clause of the will is as follows: "Trece.—Et remanente de mis bienes, derechos y acciones lo lego con calidad de fideicomiso y que acrezcan las demas, caso de fallecimiento sin sucesion legitima, .por iguales partes, a mis sobrinas Doña Cornelia y Doña Antonia Martinez, Doña Monserrate, Doña Obdulia, Doña Encarnacion, Doña Angela y Doña Concesion Ramirez de Arellano y Felipa Benicia mi hija de crianza," etc. We vary slightly the translation in the record. "The remainder of my goods, rights and actions I bequeath in the character of fideicommissum and that the other [shares] may [profit by] accretion, in case of death without *sucesion legitima*, by equal parts to my nieces [named] and Felipa Benicia my foster child, who shall adopt my surname," with appointment of a guardian for the last, a provision for her education, and a request that when that is finished she return to live with the said nieces.

It is agreed that it is possible for "sucesion legitima" to mean either issue or lawful heirs. If it means the latter, the mother inherited, as she was the lawful heir. If it means the former, then, by the terms of the will, Felipa Benicia's share went to the testator's nieces when she died. It seems to us too plain to need extended elucidation that "sucesion legitima" here means issue. The argument on the other side that the purpose is merely to prevent an escheat by making the nieces and Filipa Benicia reciprocal successors, to impose a fetter on free alienation and to enhance the dowry of the nieces, strikes us as fanciful. The natural object of this fideicommissary substitution is that which is said to be its object, to secure accretion among the shares. But that purpose would pretty nearly vanish into thin air if death without heirs were the event in view. For each of the nieces being heir to all the others, accretion among them would be excluded. It is argued, to be sure, that they might repudiate the inheritance and then claim under the will, if any of the nieces died heavily in debt. Whether this would be true by Spanish law we need not inquire. For such remote explanations must be rejected when

the will offers a different and more obvious one upon its face. And while it is pressed that substitutions are strictly construed in favor of the first taker, we do not understand that or any other rule of construction to require a perversion of language, or to govern a case where the second taker stands on an equal footing with the first in the testator's mind, with equal mutual chances, and when the plainly expressed purpose is to create an artificial class, with cross limitations in case of death without a child.

A suggestion is made by an afterthought, in a brief filed since the argument, that the testator could not exclude the mother of Felipa from her right, as necessary or forced heir, to two-thirds of Felipa's share. The suggestion comes too late. No such claim was set up in the bill, or, so far as appears, in the court below. Therefore we shall not consider at length whether, in case of a pure gratuity to one to whom the testator was under no legal obligation, the Spanish law entitled a forced heir to claim against the words of a gift like this. The texts cited are not sufficient to establish the proposition, and the contrary seems to be shown by Ley 10, Tit. 4, Part. 6, and note 13, Madrid ed. 1848. See also 4 Escriche, 1051, 1052, sub. v. Substitucion Fideicomisaria, ad fin. On the whole case the plaintiffs must abide by the construction and the law in which, it would seem from the bill, they have acquiesced for thirty years.

*Decree affirmed.*