## CHING HONG YUK v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
December 12, 1927.

1. **Aliens ⬤⟞32(8)—Evidence of nativity in proceedings to deport from Hawaii Chinese person, who claimed to be a citizen, held sufficient (8 USCA § 284).**

Notwithstanding Act May 5, 1892, § 3 (8 USCA § 284) an order for deportation of a Chinese person from Hawaii *held* unjustified, where he was admitted five years before, after hearing, by the Board of Special Inquiry, as a native of Honolulu, and the evidence of his nativity before the board was not contradicted, but rather strengthened on the hearing after his arrest.

2. **Aliens ⬤⟞32(8)—Requirement that Chinese person's citizenship should be proved "to the satisfaction" of judge or commissioner means merely that proofs must be sufficient to satisfy reasonable judicial requirements (8 USCA § 284).**

Provision of Act May 5, 1892, § 3 (8 USCA § 284), that the citizenship of a Chinese person must be proved "to the satisfaction" of the judge or commissioner, means nothing more than that the proofs must be sufficient to satisfy reasonable judicial requirements.

Appeal from the District Court of the United States for the Territory of Hawaii; William T. Rawlins, Judge.

Ching Hong Yuk, alias Wong Hung Yuk, alias Wong-Hin Yung, appeals from an order for his deportation, made by the District Court in Hawaii. Reversed, with directions.

George S. Curry, of Honolulu, Hawaii, and Frederick W. Dorr and W. H. Eberly, both of San Francisco, Cal., for appellant.

Sanford B. D. Wood, U. S. Atty., and Charles H. Hogg, Asst. U. S. Atty., both of Honolulu, Hawaii, and Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from an order made by the United States District Court in Hawaii for the deportation of Wong Hung Yuk, a person of Chinese descent domiciled in that territory and claiming to be an American citizen. The warrant of arrest, based upon a complaint filed February 3, 1927, was issued by and the hearing was in the first instance had before the District Judge. Defendant's contention is that he was born in Honolulu in 1896, and when he was 3 years old was taken by his parents to China, where he resided until 1922. On April 2, 1922, he arrived at the port of Honolulu, where, after a hearing before the Board of Special Inquiry, he was landed as an Hawaiian-born citizen. About a month later he made to the inspector in charge an application for a certificate of identity, attesting to his lawful admission and his nativity, pursuant to department rule 20, and such a certificate was duly issued to him on June 7, 1922. He continued to reside in Honolulu until his arrest. If, during this period of residence, anything occurred or any discoveries were made bearing upon the question of his citizenship, the record failed to disclose them. The inspector, upon whose complaint the warrant was issued, did not take up defendant's certificate of identity, or follow the procedure prescribed by departmental rule 20 to have it canceled.

At the hearing, in response to questions put to him by the board, defendant testified in detail, and he produced four witnesses, three of whom gave testimony tending to prove he was born in Honolulu in 1896, and had, when a child, been taken to China, as claimed by him. There was some apparent discrepancy respecting the members of his father's family, but this may very well have been due to a misunderstanding of questions. Having, as is the practice, interrogated defendant and his witnesses at length, and having found a steamship record of 1899 tending to corroborate his claim of departure for China in that year, the board unanimously held that there "were no discrepancies of a material nature in the testimony," and that there was "a preponderance of evidence" in his favor.

Upon his arrest in 1927 by the inspector, defendant freely consented to a searching examination under oath, without the presence of counsel, and the statement then taken is in good accord with the testimony given in 1922, so much so, indeed, that not only did counsel for the government refrain from putting the records in evidence, but manifested a reluctance to have them put in by the defendant. Both records were received by the court and in respect to the question of citizenship constitute substantially the only evidence. Perhaps comment should be made upon one feature of the 1927 statement. It appears that in the course of the interrogation the inspector exhibited to the defendant several immigration records with photographs attached, all apparently of the year 1899, and asked him whether he recognized any one of the photographs as being that of his alleged father, to which question he gave a negative answer. Responding to a question by the court, the inspector was permitted to say that one of the photographs

was that of defendant's alleged father, although, of course, he had no knowledge, other than that disclosed by the records themselves. What the alleged father's age was in 1899, or what changes in his appearance had been wrought in 28 years, we are not advised. Aside from that consideration, however, no one of the photographs or the records, all of which were in the courtroom, was put in evidence. But, upon the other hand, after the inspector had testified as already explained, upon the resumption of the hearing following a recess, counsel for the government stated: "I don't think we need these in evidence; there are a number of photographs of Chinese persons." Counsel for defendant having acquiesced, the court said, "All right," and the issue was closed. If the district attorney thought the failure of defendant to identify any one of the photographs as that of his alleged father to be of probative significance, it is strange that, after examining the records, he refrained from introducing them in evidence.

[1] Upon what theory of law or basis of fact the deportation was ordered, the record does not specifically disclose. The court found that the defendant was a laborer of Chinese descent, and held in general terms that he "did not establish to the satisfaction of this court his lawful right to remain in the United States," but filed no opinion and made no finding upon the vital issue of the place of his birth.

Upon such a record it is deemed unnecessary to discuss the several questions of law considered in the briefs. As we understand it, the utmost contention of the government is that the certificate of identity issued to the defendant is nothing more than evidence that he is the person admitted by the Board of Special Inquiry upon the hearing of 1922; that therefore it has no more efficacy than the record of such admission; that the order of admission does not constitute a judicial estoppel; and, finally, that it is competent for the court now, without other evidence, to order deportation upon the identical evidence upon which the board admitted him.

[2] Assuming, without deciding, that all of these propositions are correct, we are still of the opinion that the judgment below was erroneous. True, under section 3 of the Act of May 5, 1892 (8 USCA § 284), the citizenship of a Chinese person must be proved "to the satisfaction" of the judge or commissioner; but that means nothing more than that the proofs must be sufficient to satisfy reasonable judicial requirements. And even if it be held that the mere order of admission does not make a prima facie case for defendant, we think that in considering the weight and credibility of the testimony upon which it was based, and upon which the lower court acted, some probative significance may properly be given the fact that it was credited by the three public officers who had the advantage, not enjoyed by the court, of hearing the witnesses testify. It would hardly be suggested that these officers were predisposed in defendant's favor.

But, independently, we find no sufficient reason for rejecting the testimony of 1922, especially in view of the fact that it is now fortified by the consideration that after a lapse of five years defendant has given substantially the same detailed statement, under circumstances negativing the probability, if not the possibility, of his having been coached, or having had access to his original testimony.

The judgment is reversed, with directions to dismiss the complaint and to discharge the defendant.