44 F.2d 503 (1930)
Ex parte KEIZO KAMIYAMA.
KEIZO KAMIYAMA
v.
CARR, Director of Immigration.
No. 6177.
Circuit Court of Appeals, Ninth Circuit.
November 3, 1930.
Rehearing Denied December 6, 1930.
*504 J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellant.
Samuel W. McNabb, U. S. Atty., and P. V. Davis and Harry Graham Balter, Asst. U. S. Attys., all of Los Angeles, Cal. (Harry E. Blee, U. S. Immigration Service, of Los Angeles, Cal., on the brief), for appellee.
Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.
WILBUR, Circuit Judge.
This is an appeal from an order of the District Court discharging a writ of habeas corpus applied for by the appellant and remanding him to the immigration authorities for deportation under warrant therefor issued by the Secretary of Labor on June 21, 1929. The warrant of deportation was issued upon the ground that the appellant has no immigration visa, is not eligible to citizenship, and is in the United States in violation of the law. It is admitted that the appellant entered the United States surreptitiously and is subject to deportation, unless such deportation is barred by reason of the fact that he entered the United States previous to July 1, 1924. Immigration Act of 1924, 43 Stat. 153, 169, § 31(c). The appellant was questioned as to his right to be in the United States by an immigration inspector on the 17th of November, 1928, and was thereupon arrested and held in custody pending the application for telegraphic warrant, which was issued two days later, November 19, 1928.
On November 17th, after his arrest, the appellant stated, among other things, that he was thirty-seven years old; that he entered the United States February 13, 1920, near Calexico; that he worked until 1922 on the Namakura ranch at Compton, also known as Carson ranch No. 5; that he worked at Lomita for three years for a man named Suruki (1924 to 1927). The inspector interviewed M. Suruki, the man referred to by the appellant as his employer, and ascertained from him that a Japanese named Keizo Kamiyama had worked for him on Carson Ranch No. 5 two or three months in 1926, and that he first saw him in March or April of that year. Keizo Kamiyama had lived with M. Suruki and his wife, Mrs. Haru Suruki, at that time. This was confirmed by Mrs. Suruki, and both stated under oath that the photograph of the appellant was not the photograph of the man who had lived with them and worked for M. Suruki. It will be observed that neither Mr. nor Mrs. Suruki referred to the earlier period 1924-1927, when the appellant claims to have worked for M. Suruki, but that the latter testified he first saw Keizo Kamiyama in April, 1926. M. Suruki seems to have been working for K. Nishimoto, who was also interviewed by the inspector. His records show that Keizo Kamiyama worked for Mr. Suruki for about two years. When shown the photograph of the appellant he was in doubt as to his identity, stating, "this photograph looks like Keizo Kamiyama. Keizo Kamiyama is fatter; it is hard for me to say." *505 He also stated that Keizo Kamiyama lived with Mr. Suruki and wife during the two years that he worked for K. Nishimoto.
Upon the hearing before the inspector January 25, 1929, the appellant again testified that he worked for a man named Suruki at Lomita for three years beginning in 1924 and that he lived with Suruki and his wife on the ranch for about two years; that he again worked for Suruki from July to September in 1927, living with them again during that period.
Without at present discussing the many other points presented in the case, it is evident that, where the appellant stated positively that he worked for and lived with Mr. and Mrs. Suruki, and they each state positively that appellant is not the man who worked for and lived with them, we cannot say that there was anything unfair in the rejection of the testimony of the appellant. Appellant raises several points upon which he bases the contention that the hearing was so unfair as to amount to a deprivation of a due process of law. The entire record is brought to us on an appeal from the order of the District Court for our consideration. It appears that from the day after his arrest appellant was represented by counsel, not only upon the hearing before the immigration authorities in San Pedro, Cal., but also before the Board of Review, which made the final order of deportation in Washington. The order of deportation was made nearly eight months after the appellant was arrested. After the first hearing before the inspector on January 25, 1920, opportunity was given to the appellant to file a brief; thereafter, at the request of the appellant, the proceedings were reopened, and on the 16th of March he was given an opportunity to call other witnesses, and the recommendation of the inspector was made after the hearing in March. It is a fundamental rule in the review of judicial proceedings that a party is not heard on appeal upon questions not raised in the trial court, 3 C. J. 689, § 580; Edwards v. Elliott, 21 Wall. 532, 22 L. Ed. 487; Walker v. Sauvinet, 92 U. S. 90, 23 L. Ed. 678; Wilson v. McNamee, 102 U. S. 572, 26 L. Ed. 234; Rodriguez v. Vivoni, 201 U. S. 371, 26 S. Ct. 475, 50 L. Ed. 792; Huse v. U. S., 222 U. S. 496, 32 S. Ct. 119, 56 L. Ed. 285, and, where a party has an opportunity to make an objection to a ruling adverse to him and does not do so, he cannot urge the objection on appeal. Wood v. Wilbert, 226 U. S. 384, 33 S. Ct. 125, 57 L. Ed. 264. He must also note an exception to the ruling of the court, to the end that the ruling may be corrected by the court itself if deemed by it to be erroneous. Gonzales v. Buist, 224 U. S. 126, 32 S. Ct. 463, 56 L. Ed. 693. The question here presented is not whether some error has been committed in the proceedings for the deportation of the appellant, but whether the proceedings as a whole were so unfair as to deprive him of the right to due process of law. U. S. ex rel. Bilokumsky v. Tod, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221; De Bruler v. Gallo (C. C. A.) 184 F. 566; Ex parte Pouliot (D. C.) 196 F. 437; Chin Wing Goon v. Johnson (C. C. A.) 20 F.(2d) 116; Wong Wey v. Johnson (C. C. A.) 23 F.(2d) 326. As, upon a direct appeal, a party will not be heard on objections to alleged errors committed by the trial court because of what amounts in legal effect to his acquiescence therein, it is clear that upon habeas corpus, where the only issue is the fairness of proceedings, he cannot complain of their unfairness in matters where he has consented to or acquiesced in the conduct or act of which he complains.
By stipulation it is customary, as in this case, to send to this court the complete original record and files of the immigration office relating to the order of deportation, and in cases involving claims of relationship, made at intervals over long periods of time, all the files in all the cases involved in the comparison of such claims before the immigration authorities. This is a convenient and perhaps the best way to present to us the question involved. On such a record it is possible to determine, as in this case, whether the petitioner is objecting to matters in which he acquiesced in the proceedings before the immigration authorities. Where an alien is represented by an attorney before the immigration authorities, it is clear that the very least that can be required of such a party so represented is that he should object in such proceedings to the unfairness of which he later complains to the court in habeas corpus proceedings. If not so represented, the rule may not be so strictly applied, but we are not here concerned with such a case, and consequently do not pass on that question.
There is found in the record transmitted to this court an anonymous letter, dated April 25, 1929, addressed to the Los Angeles Immigration Station of San Pedro, California, signed "A citizen of Los Angeles." No reference is made in the file to this letter. The inspector, in his recommendation, does not refer to it. Apparently it was forwarded to Washington with his recommendation. *506 After the records arrived in Washington the attorney for the appellant was given an opportunity to inspect the record, and wrote a brief, in which no reference whatever is made to this anonymous letter. The Board of Review subsequently recommended the order of deportation, which was made by the Assistant Secretary of Labor upon that recommendation, and in their recommendation they nowhere allude to the anonymous letter. So far as appears, no attention whatever was given to this letter, either by the immigration authorities or by the appellant. Under these circumstances the appellant cannot now be heard to complain of the fact that this anonymous letter was forwarded to Washington with the files in the case. Appellant asserts in the brief that "the document was sent on as evidence in the case. It was not shown to the alien, nor was he allowed or permitted to see it, nor to cross-examine its author." There is no evidence to substantiate this assertion. The case thus differs from Chew Hoy Quong v. White (C. C. A. 9) 249 F. 869, relied upon by the appellant. Appellant similarly complains of the fact that in the recommendation of the inspector, forwarded to Washington, attention is therein called to two other immigration cases, in which a Japanese had sought to maintain his right to remain in the United States by impersonating a Japanese who had entered before 1924. In each case the inspector stated the Japanese had admitted the attempted fraud. Such a reference merely amounted to an argument to support the contention of the inspector that the appellant was likewise impersonating Keizo Kamiyama for a similar purpose. It has frequently been held that the immigration authorities are entitled to take notice of all their records. Yee Chun v. Nagle (C. C. A.) 35 F. (2d) 839. It is sufficient, however, to say that, after this recommendation was made, appellant argued the case before the Board of Review, without any objection to the recommendation in that regard and without making any contention that the statement of the inspector should not be considered by the Board of Review.
We have a similar situation with reference to the complaint now made by the appellant concerning the introduction of affidavits taken ex parte by the inspector after the inception of these proceedings but before the hearing on January 25, 1929. These affidavits, including the affidavit of M. Suruki and his wife, Haru Suruki, were shown to appellant's attorney at that time, and, after first interposing an objection to their use, he finally expressly consented to their reception in evidence and examined the inspector with relation thereto for the purpose of developing the circumstances under which the affidavits were obtained, and, consequently, to ascertain what weight should be given to them by the Board of Review when the case was considered by them. Appellant certainly should not now be heard to complain of the impropriety of an act to which he expressly consented. In this connection it should be added that, when the hearing was renewed, at the instance of the appellant, on March 16th, the appellant produced K. Nishimoto, one of the witnesses from whom such an affidavit had been obtained, and the testimony of the witness thus produced was somewhat more favorable to the appellant than the affidavit secured by the inspector, in that he was a trifle more certain in his identification of the defendant as Keizo Kamiyama, who had worked under Mr. Suruki for him between 1924 and 1927. This fact emphasizes the failure of the appellant to adopt a similar course with Mr. and Mrs. Suruki. Appellant claims to have lived with them and to have worked immediately under Mr. Suruki. Instead of calling them to either affirm or disaffirm the statements in their affidavits already filed, the appellant called a witness who was evidently not so well acquainted with Mr. Keizo Kamiyama, and whose identification, in view of the large number of employees working for him, would be less certain. In view of the rule that the burden was upon the appellant to establish his continuous residence in the United States from 1924 onward, the failure of the appellant to call these two witnesses amounts almost to an admission that his own testimony in that regard was false.
We have set forth this portion of the record with a view to emphasizing the necessity on the part of persons seeking to overturn the act of the immigration authorities, for making before said authorities, in such hearing as is accorded to them, the objections and contentions on which they seek to rely in the courts. Ordinary fair dealing requires this much, and the volume of work imposed upon the court by these appeals emphasizes the necessity of the rule universally applied on appeal or review.
The appellant also complains of the fact that he was examined by the inspector after his arrest. The record, however, shows that he was informed at the time of his arrest that it was the intention of the immigration authorities to question him and to use his *507 statement as evidence in proceedings against him, and that he expressly consented to the examination, and, thus warned, answered the questions asked of him until he was confronted with an inconsistency in his statement and then refused to answer further questions. He cannot be heard now to object to that to which he formally assented, nor is there any inherent unfairness in questions asked under these circumstances. The appellant evidently was fully advised that his right to remain in the United States depended upon his ability to prove that he had been in the United States from January, 1924. It is quite natural that he should volunteer a statement as to his whereabouts during that period if he had in fact been in the United States during that period. Nor do we find in the record any objection to the use of this statement at the time of the hearing. As we understand the record, appellant withdrew all objections to the introduction of this statement. If we are in error in this, it is clear that no serious objection was made to this introduction. While we would not be inclined to hold that parties to the proceeding before the immigration authorities should be bound by strict rules of proceeding, requiring statement of grounds of objection, it is obvious that counsel should make it clear to the immigration authorities in some fashion just what objection is being made and the ground of the objection. Take the situation which is disclosed by the record here. The burden is on the appellant to show his right to remain in the United States. He is unable to produce an immigration visa or any documentary evidence showing his right, and based his claim to remain solely upon the fact that he had been in the United States since 1924. He could not stand mute before the immigration authorities and offer no evidence in support of his claim, and he was virtually bound to testify in the case. Had objection been made to the affidavit or statement secured by the immigration authorities after the arrest of the appellant and before his trial, the immigration authorities could have withheld the affidavit and utilized the same in cross-examining the appellant. Instead of this, appellant was evidently given an opportunity to see his statement before the hearing and to explain upon the hearing such discrepancies as were found therein. For illustration, when arrested the appellant gave his age as thirty-seven years. On the hearing he gave his age as twenty-four years. In his original statement he gave the name of the ship on which he came to America as the Siberia Maru. Upon his attention being called to the fact that this ship did not stop at Mazatlan, Mexico, where he said he landed, he was unable to give any explanation, and at the hearing he was entirely uncertain as to the name of the steamer on which he arrived.
It should perhaps be added, to avoid the impression that the appellant's contention has been overlooked, that great reliance has been placed by him upon his possession of some envelopes and receipts of Keizo Kamiyama. The receipt is dated, and the envelopes are postmarked, before 1924. These, however, have slight, if any, probative value, for their weight as evidence depends entirely upon the testimony of appellant that he received them at the time and places indicated.
Order affirmed.