**LI BING SUN v. NAGLE, Commissioner of Immigration. ***

**No. 6593.**

Circuit Court of Appeals, Ninth Circuit.
March 14, 1932.

*Rehearing denied April 28, 1932.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and I. M. Peckham and Herman A. Van Der Zee, Asst. U. S. Atty., all of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This appeal comes from an order of the District Court for the Northern District of California, Southern Division, denying a petition for a writ of habeas corpus.

Appellant, Li Bing Sun, is a male Chinese, 26 years old. He first arrived in the United States on December 29, 1919, and was admitted on February 16, 1920, as the minor son of a Chinese merchant. Since his original admission he has made two trips to China. On the first trip he left the United States on November 27, 1926, and returned on October 20, 1927, being admitted without question; on the second trip he left the United States on November 22, 1929, and returned on November 26, 1930. Prior to each of his trips he obtained from the immigration authorities a laborer's return certificate, form 432, which was issued upon proof that he had property in the United States to the amount of at least $1,000.

On appellant's return to the United States on November 26, 1930, a Board of Special Inquiry decided that he was not entitled to admission, relying on the authority of the Chinese Exclusion Act of 1888, which provides, among other things:

"No Chinese laborer in the United States shall be permitted, after having left, to return thereto, except under the conditions stated in the following sections." 8 USCA § 275.

"That no Chinese laborer within the purview of the preceding section shall be permitted to return to the United States unless he has lawful wife, child, or parent in the United States, or property therein of the value of $1,000, or debts of like amount due him and pending settlement. * * *" 8 USCA § 276.

That the departing laborer obtain a return certificate before leaving; and that "the right to return under the said certificate shall be limited to one year; but it may be extended for an additional period, not to exceed a year, in cases where, by reason of sickness or other cause of disability beyond his control, the holder thereof shall be rendered unable sooner to return, which facts shall be fully reported to and investigated by the consular representative of the United States at the port or place from which such laborer departs for the United States, and certified by such representative of the United States to the satisfaction of such officer under the control of the Commissioner General of Immigration as the Secretary of Labor may designate therefor at the port where such Chinese person shall seek to land in the United States, such certificate to be delivered by said representative to the master of the vessel on which he departs for the United States. And no Chinese laborer shall be permitted to reenter the United States without producing to the proper officer at the port of entry the return certificate herein required. * * *" 8 USCA § 277.

Appellant knew at the time that he left the United States in 1929 that he must return to the United States within one year from the date of his departure. On August 14, 1930, appellant was physically examined at the Hongkong consulate by a public health surgeon, and was certified as able to return to the United States. In connection with this visit to the consulate the Secretary of Labor said:

"Asked why he did not present an overtime certificate, the alien stated that he had attempted to secure an overtime certificate but 'the American Consulate refused to issue it to him.' The State Department was requested to ascertain from the American Consulate General at Hongkong whether he had in fact refused an overtime certificate applied

for by this alien. From the Consul's reply it appears that the alien did not go to the Consulate at all after the time had expired within which he could have reached an American port within the year. What the American Consul did refuse if anything was not an overtime certificate applied for when such application would be proper but an assurance that a (favorable) overtime certificate would be issued after the expiration of the year, this refusal being apparently in view of the fact that as stated above a physical examination of the alien showed him to be able to travel. This action at the Consulate was taken on August 14, 1930, when the alien had plenty of time to reach San Francisco before the expiration of the year."

Appellant contended that his physical condition, due to boils on his feet, was such as to prevent his return in the allotted time, but from his own testimony he ceased having the boils on his feet on October 7, 1930. On September 20, 1930, appellant applied by mail for an extension, and was informed of the requirement of evidence of disability for the issuance of a (favorable) overtime certificate. The consul said that there was "no further record" after that date, but it appears that on October 18, 1930, appellant presented himself to the consulate and was vaccinated; on October 20 applicant again went to the public health service and to the consulate, and his form 432 bears the stamp of the consulate of that date and the written notation, "Sailing October 23, 1930, O. K. pnj." On October 21 applicant presented himself to the public health service again. On October 23 the President Grant, the last steamer by which appellant might have reached San Francisco on time, sailed without him. On November 4 the medical officer of the public health service certified that Li Bing Sun had not been in contact with any one suffering from cerebrospinal meningitis in the fourteen days immediately preceding. The President Cleveland sailed on that day, appellant on board, and he arrived in San Francisco on November 26, 1930, four days after his return certificate, bearing no extensions, had expired.

After the Board of Special Inquiry had ruled against allowing appellant to enter, the case was taken to the Secretary of Labor on appeal. While the appeal was pending, a communication arrived in the form of a cablegram from the American consulate at Hongkong that was considered by the Board of Review. The telegram said:

"Li Bing Sun applied personally August 14, 1930, for assurance of favorable action on overtime certificate, after expiration of one year, was examined by the U. S. Public Health Officer this office and certified able to return to the United States, was advised to return to San Francisco before November 22. On September 20th he applied by mail for extension and was informed of provisions of law concerning issuance of overtime certificates and the necessity of submitting proof of disability beyond control, in his case a medical certificate. No further record apparently received approval of his form for passage arriving United States before November 22 and later changed plans without reference this Consulate General."

The Secretary of Labor affirmed the decision of the Board of Special Inquiry. Appellant having been ordered deported and held in custody by appellee for deportation, proceedings in habeas corpus were instituted, and from the order of the court below denying the petition for a writ of habeas corpus comes this appeal.

The first question before us is whether or not the consideration of the cablegram hereinbefore quoted from the American consulate at Hongkong, evidence before the Board of Review but not before the Board of Special Inquiry, deprived appellant of any of his rights and was not in accordance with "due process of law." Appellant contends that the introduction of this cablegram was unfair and prejudicial to himself, but that "in any event, the communication is immaterial. * * * *"

We do not consider the message immaterial, but, in the light of all the facts of the case, we think its admission would not justify a reversal of the judgment of the District Court and the findings of the Board of Review. As has often been said, in proceedings of this character before immigration officers, the strict common-law rules of evidence are not followed. Records and reports are introduced in evidence that would not be admitted in a court of law. In the cases cited by the appellant, the courts held that "due process" had not been accorded to the aliens, in that evidence was considered, without the knowledge of the alien or his attorney and neither the alien nor his attorney was given any opportunity to meet it; such is not the case here.

Upon receipt of the communication for the consul, appellant's Washington attorney was advised of it and was allowed ten days within which to review it. Appellant's attorney there made no objection to the consideration of the consul's communication, and made no request for any continuance or opportuni-

ty to furnish any additional evidence after he had examined that communication. In the oral argument before this court, moreover, counsel admitted that, under the circumstances of the case, he was probably precluded from raising the question for the first time on appeal. In an analogous situation we said, in the case of Keizo Kamiyama v. Carr, 44 F.(2d) 503, 505:

"Where an alien is represented by an attorney before the immigration authorities, it is clear that the very least that can be required of such a party so represented is that he should object in such proceedings to the unfairness of which he later complains to the court in habeas corpus proceedings. * * * It is sufficient, however, to say that after this recommendation was made, appellant argued the case before the Board of Review, without any objection to the recommendation in that regard and without making any contention that the statement of the inspector should not be considered by the Board of Review."

 It is well settled that, when an alien seeks re-entry into the United States on a laborer's return certificate after more than a year's absence, the immigration authorities in the United States and not the consular officers in the foreign country are the final judges of whether or not the delay of the alien was "by reason of sickness or other cause of disability beyond his control." The immigration authorities are not bound by the consular certificate of facts, but are at liberty to decide the questions upon all of the evidence that is adduced before them. Nagle v. Won Bing Jung (C. C. A. 9) 22 F.(2d) 20; Nagle v. Toy Young Quen (C. C. A. 9) 22 F.(2d) 18. However, 8 USCA 277, quoted supra, provides that the consul in China shall investigate the facts concerning the alien's alleged inability to return to the United States within the year allowed and shall certify such facts to the immigration officers.

Here there was no such certificate. We do not deem it necessary to determine whether or not such a certificate is a mandatory part of the statute or whether it is inserted purely for administrative purposes. Even if it be purely administrative, any absence of facts certified to by an American consul who is at the particular port in China from which the alien sails and who is best qualified to make the necessary investigation simply casts a much greater additional burden of proof on any applicant for entry.

The last steamer by which appellant might have reached the United States on time sailed from Hongkong on October 23; from appellant's own testimony the boils on his feet which he claimed made him unable to travel were well about October 7. This left an interval of 16 days during which appellant might have been quarantined by the public health service if such quarantine had been necessary. We do not read the law, however, as requiring that a Chinese person coming to the United States be kept in rigid quarantine for a period of fourteen days immediately preceding his sailing.

Appellant relies upon the executive order of June 21, 1929, No. 5143, regarding quarantine powers, but this merely directed that no person might come from any port in China except under such conditions as the Secretary of the Treasury might prescribe. The regulations of the Secretary of the Treasury which were in force at the time appellant embarked from Hongkong were those issued on November 6, 1929, the pertinent portions of which are as follows:

"1. Persons shall be permitted to embark for United States ports only * * * under the immediate supervision of a medical officer of the United States Public Health Service, who shall assure himself that such persons are free from signs or symptoms of meningitis.

"2. Persons known or suspected by the medical officer to have resided within 14 days in premises in which meningitis then existed or otherwise having had direct contact with cases of meningitis, shall not be permitted to embark."

We do not interpret these regulations as providing for strict quarantine in all cases nor does it appear from the record that appellant actually was in strict quarantine; his inspection card shows merely that he appeared for inspection on October 18, October 20, and October 21.

However, even if a requirement of strict quarantine for 14 days had been necessary, that should have been considered by appellant and, as we have seen, he had ample time between the date on which the boils healed, September 7, and the sailing of the last boat on which he could have reached the United States within a year, October 23, in which to undergo any necessary quarantine. "A quarantine is not 'actus Dei,' but an ordinary incident of travel by sea, to be contemplated by one undertaking a voyage." 21 Op. Attys. Gen. 575, 576.

The instant case is distinguished from the cases of Ex parte Yee Gee (D. C.) 17 F.(2d) 653, and Ex parte Woo Show How (D. C.)

17 F.(2d) 652. Therein the petitioners applied for overtime certificates after a year from their departure from the United States had expired. The District Courts held, and rightly we think, that the consuls should have issued the certificates and left the final decision to the immigration authorities in the United States. Here the appellant applied for an overtime certificate before the time legally allowed him had expired, and we think the consul acted correctly in refusing to issue a certificate, or rather in refusing to issue what would have been assurance of favorable action on an overtime certificate. There is substantial evidence in the record to sustain the finding of the Secretary of Labor that:

"The real reason and the only reason for the alien's failure to arrive at San Francisco within the year after his departure from that port appears to be in his statement 'I expected to return on the President Grant but I thought that being four days overtime would not cause any difficulty in my landing,' i. e., in his case the law would not be enforced."

We find nothing in the record to indicate arbitrary or capricious action on the part of the Board of Special Inquiry or the Board of Review, and therefore the judgment of the lower court denying the writ must be affirmed.

Affirmed.