**CHUN KOCK QUON v. PROCTOR, Commissioner of Immigration and Naturalization.**

**No. 8484.**

Circuit Court of Appeals, Ninth Circuit.

Sept. 28, 1937.

Adam Beeler and Edwards E. Merges, both of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., F. A. Pellegrini and Gerald Shucklin, Asst. U. S. Attys., all of Seattle, Wash. (J. P. Sanderson, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order of the District Court denying petitioner a writ of habeas corpus. The writ was sought on the ground that petitioner, a citizen of the United States, seeking entry to the country of his birth, was being unlawfully deprived of his liberty by an order of the Secretary of Labor excluding him from the United States on the ground that he was an alien Chinese not entitled to admission.

The principles controlling such a review have long been established by the Supreme Court and Circuit Courts of Appeals in this and other circuits. The burden of proving citizenship is on the applicant. Wong Chow Gin v. Cahill (C.C.A. 9) 79 F.(2d) 854, 857. Hearsay and other evidence incompetent in a judicial hearing is admissible. Kwock Jan Fat v. White, 253 U.S. 454, 460, 40 S.Ct. 566, 568, 64 L.Ed. 1010; Ng Fung Ho v. White, 259 U.S. 276, 282, 42 S.Ct. 492, 494, 66 L.Ed. 938; Li Bing Sun v. Nagle (C.C.A.-9) 56 F.(2d) 1000, 1002.

Where there has been a prior determination of citizenship by the immigration officials, it makes a prima facie case of citizenship. Leong Kwai Yin v. U.S.(C. C.A.-9) 31 F.(2d) 738, 739. The prima facie case is fortified where, as here, the applicant, many years later, without opportunity of being coached, gives substantially the same testimony as on the original hearing. Ching Hong Yuk v. U. S. (C.C.A.) 23 F.(2d) 174, 175.

A finding of the immigration authorities to the effect that an applicant is not a citizen must have some factual support in the record. Kwock Jan Fat v. White, 253 U.S. 454, 458, 40 S.Ct. 566, 567, 64 L.Ed. 1010.

The fundamental principles controlling the deliberations and determination of the immigration officials and the Secretary in an exclusion case are held, in an opinion of Mr. Justice Hughes, to be "the fundamental principles of justice embraced within the conception of due process of law." Tang Tun v. Edsell, 223 U.S. 673, 682, 32 S.Ct. 359, 363, 56 L.Ed. 606.

In a subsequent exclusion case, in an opinion by Mr. Justice Clarke, the Supreme Court said: "The acts of Congress give great power to the Secretary of Labor over Chinese immigrants and persons of Chinese descent. It is a power to be administered, not arbitrarily and secretly, but fairly and openly, under the restraints of the tradition and principles of free government applicable where the fundamental rights of men are involved, regardless of their origin or race. It is the province of the courts, in proceedings for review, within the limits amply defined in the cases cited, to prevent abuse of this extraordinary power. * * * *It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country.*" (Italics supplied.) Kwock Jan Fat v. White, 253 U.S. 454, 464, 40 S.Ct. 566, 569, 570, 64 L.Ed. 1010.

This court has recently stated of the immigration officials in deportation cases: "Their obligation as enforcers of the immigration laws is as mandatory to establish citizenship, if it exist, as it is to deport the alien." Lau Hu Yuen v. U. S. (C.C.A. 9) 85 F.(2d) 327, 331.

In both deportation and exclusion cases (8 U.S.C.A. § 284) the burden of proof of his citizenship is on the person seeking to remain and the applicant for admission. Where, as here, there exists a prior determination that he is a citizen, by the officials constituted for the protection of his rights as such, there is imposed a similar duty upon the immigration officers to be vigilant, when he is seeking entry to the country of his birth, not to deprive him of his birthright.

In the Tang Tun Case and Kwock Jan Fat Case, like the case at bar, the question decided was the right of entry into the United States. They answer appellee's contention that these fundamental principles controlling our review are applicable only in deportation cases.

The appellant, of full Chinese blood, on seeking entrance at Seattle, claimed that he is a citizen of the United States by virtue of his birth in Honolulu, Hawaiian Islands, in the year 1897. The immigration officers, at the hearing before the Bureau's board of inquiry at Seattle, established appellant's prima facie case by introducing in evidence the findings and decision of the Bureau's board of inquiry at Honolulu of November 21, 1922. Also they produced the testimony of the appellant and three supporting witnesses, all of whom appeared before the Honolulu board and which were part of the evidence taken by that board

upon which, in part, the determination of appellant's citizenship was then made.

Concerning appellant's extended testimony at Honolulu in 1922, it fully supports the findings of the board of inquiry that he was born in Honolulu. Fourteen years later, at the hearing in Seattle, he was given the most searching cross-examination. One hundred and thirty questions, involving over two thousand words of testimony of most intimate particulars of his life in China and in the United States, produced no inconsistency or contradiction in itself and presented no questionable variance with his testimony of fourteen years before. This testimony also showed that his certificate of identity as a citizen, based on the findings of the Honolulu board of special inquiry, had been accepted by the Bureau officials in San Francisco when he later went to the mainland.

It also showed that he remained as a citizen of the United States for nearly ten years. During that time his studies in aviation made him sufficiently proficient in aviation to become an instructor in China during the years 1933, 1934, and 1935. His ten years' residence is of added probative weight in support of the prima facie case of the board of inquiry. In re Goon Bon June (D.C.) 13 F.(2d) 264, 265.

In direct support of appellant's birth in Honolulu, the board of inquiry there heard the testimony of Ching Nai. He is now dead. There is not an iota of evidence of 'fraud, deceit, or any impeaching quality in the testimony of this witness. Concerning such testimony of such a witness, it has been held, "Fraud of this dead man and his co-affiant cannot be lightly inferred." Fong Tan Jew ex rel. Chin Hong Fun v. Tillinghast (C.C.A.-1) 24 F.(2d) 632, 634.

Although there is nothing in the record before the officials below to impugn Ching Nai's integrity, the chairman of the board below, in reviewing the evidence, damns him and his evidence as "of the usual class of witnesses that appeared to testify in fraudulent Honolulu cases of that time."

Not only is Ching Nai's integrity not questioned in the evidence, but there is nothing in the record to support the statement that there were "fraudulent" cases in Honolulu at that time.

The Honolulu finding of citizenship is also supported by the testimony of Chun Fong that appellant was born there. He is now in China. He also is branded as of the fraudulent class of witnesses, though no evidence appears that he belonged to the condemned class or even that there was such a class.

In a recent decision this court has pointed out the duty of the government to investigate pertinent facts in China, where the government claims there is fabricated and fraudulent evidence on which a decision of the board of inquiry has established that the detained person is an American citizen. Lau Hu Yuen v. U.S. (C.C.A.) 85 F.(2d) 327. To offer Chun Fong's evidence and then claim he is a fraudulent witness, without any evidence of fraud and without seeking to interview him in China, certainly is not giving to the previously proved citizen a diligence in search for the truth as impartial in his protection as it is in the protection of the government.

Further evidence of the prejudiced atmosphere of the Seattle hearing is the significance attached to the finding that three other Chinese have claimed to be sons of appellant's father. Since there is shown no connection of appellant with these three cases, the use of such testimony, even where *both* parents are claimed to be the same for several claimants to citizenship, falls within the condemnation of our decision in Fong Lum Quai v. U. S., 49 F.(2d) 19, 21, 22.

However, when we come to examine the files in those cases it appears that one of the claimants was refused entry. Certainly there is no evidence of fraud or laxity.

The other two were proved to have been born of an *entirely different mother*. Instead of the summary of the Seattle board stating the difference in mothers, it states that "nothing further is contained in the Honolulu File." It is obvious that a man may have children by two different women. There may have been fraud in the earlier cases, but none shown either there or in the instant proceeding. Nevertheless, fraud is attributed to appellant in the following language: *"Nothing further* is contained in the Honolulu file relating to these two applicants (the sons of the other mother). The admission of these applicants at Honolulu occurred several months prior to the admission of the present applicant (appellant). *It is apparent. that the appli-*

*cant's claim to being a son of Ah Young is fraudulent."* (Italics supplied.)

When Federal officers mete out such treatment to a man previously established to be an American citizen, we can well understand the bitter irony of the current phrase "A Chinaman's chance."

There was a third witness who testified before the Honolulu board, who was interrogated in 1936, not in the presence of the appellant but in Honolulu by some other government official who, himself, did not appear at the hearing in Seattle. In the testimony of this witness, Chun Tuck, there are discrepancies as to dates and facts as between his testimony in 1936 and that 14 years earlier. It was also sought to prove that Chun Tuck's evidence in another case, with which appellant had no connection, was not true. Assuming the doubtful competence of evidence of what Chun Tuck had done in some other case, in which appellant did not participate (Fong Lum Quai v. U. S., supra), there is not sufficient here, even if heard by a tribunal in the proper attitude of mind, to overcome the prima facie case which we have held is created by the decision of the Honolulu board, supported by the three unimpeached witnesses and the ten years' residence in the United States.

It is sought to be established that the records of Manoa Cemetery show that appellant's father was not buried there as claimed by appellant and his witnesses. This is attempted by the introduction of a letter from a Honolulu official saying that the Honolulu office has photostatic copies of the records of Manoa Cemetery and that the "Records of the Manoa Chinese Cemetery have been used in many cases and they have proven to be accurate and reliable."

No statement is made as to *how* they have been "used" as warranting this conclusion of the distant and unsworn witness that they were accurate, but the significant thing is that the photostatic copies were not produced at appellant's hearing. Instead we have another conclusion of a letter from an absent and unsworn inspector that the records show Ah Young was not buried in the cemetery between the dates of December 16, 1898, and *February 6, 1899,* although it was claimed he died on January 5, 1899.

We recognize the then existing custom of the Chinese in America of returning to China the remains of those dying here. The obvious inquiry is, Was Ah Young's body held in a vault with intent to ship the remains to China without burial at all, and then later determined to be buried in Honolulu and then buried *after* February 6, 1899? Would the photostatic copies have shown this if they had been produced?

The fact that hearsay evidence is admissible does not alter its lesser probative value. When the hearsay consists of mere conclusions of letters, not even made affidavits, and offered with the admission that the records from which the conclusions are drawn are available to the board of inquiry, but not produced, it has no probative weight at all against the prima facie case of the prior determination of citizenship.

It would be sufficient to base our reversal on the manifest unfairness of the board of special inquiry and its violation of the fundamental principles governing due process in a tribunal in which is to be determined whether a man shall be deprived of his previously established United States citizenship.

However, the deliberations of the board show a complete disregard of other decisions of the Supreme Court and of this court, not only in its attitude of approach to the question in issue, but in the evaluation of other evidence.

The board apparently acted under an unproved impression that the Honolulu board of inquiry was engaged in other frauds at the time of its decision on appellant's citizenship. This board consisted of three members. There is not a particle of evidence that any of these three men was anything but an upright officer of the government, and no evidence that they are not today occupying the same positions with the government that they then held.

To deliberate in a mood created by such a suspicion violated our decisions in Leong Kwai Yin v. U. S., 31 F.(2d) 738, 739, and La Hu Yuen v. U. S., 85 F.(2d) 327, 331.

The board below apparently finds significance in the fact that some of the witnesses, unidentified, had testified in other cases of either admission or exclusion of Chinese. There is not an iota of evidence that there was any impropriety in the testimony nor that there was any fraud or impropriety in the cases in which they

are claimed to have testified. Two of the witnesses were old residents of Honolulu, both 52 years of age at the time they testified in 1922. They had been in Honolulu in the period of the 1890's. This court takes judicial notice of the practice of Chinese parents of sending their children to China to be educated there. The low cost of living, probably the preference for the Chinese surroundings, may animate them. That old residents should be called frequently to testify regarding the birth in America and departure for China of such children does not in the slightest way impugn their integrity. It is what one would normally expect. Again we have a disregard of the decision of this court and unjust suspicion taking the place of actual evidence.

Stress is laid by the board on the fact that the record of the unimpeached board of inquiry of 1922 states that the records of the board of health of Honolulu record the death on a certain day of a person named Chun Ah Young, found to be the father of the appellant, and that the record, when later examined, showed the death on the same day as that found at the hearing of the Honolulu board was one Ah Young, the prefix Chun being omitted. The record before the Honolulu board does not purport to contain the names of all the witnesses nor even the witness who produced the record of the board of health. The record before the Seattle board shows the extreme informality of the procedure in this class of cases. Here unverified letters and memoranda from one officer to another are accepted as evidence. The identification of Chun Ah Young as the Ah Young appearing in the records of the board of health may well have been made to the board by one of the other government officials. The Honolulu record contains the statement that it has considered "the identifications." In view of this finding and its decision of citizenship on the finding, we are not in a position to say that these identifications did not include an identification of the name Ah Young in the board of health records as Chun Ah Young, the father of appellant. It is not by unfounded suspicious inferences against consistent statements of the record that an established citizenship may be destroyed.

The writ should issue promptly and appellant taken from the custody of the appellee and released and permitted the full and free enjoyment of his rights as a citizen of the United States.

Reversed.