## YONG YUNG SEE v. UNITED STATES.
### No. 8488.

Circuit Court of Appeals, Ninth Circuit.
Oct. 28, 1937.

E. J. Botts, of Honolulu, T. H., for appellant.

Ingram M. Stainback, U. S. Atty., and J. Frank McLaughlin, Asst. U. S. Atty., both of Honolulu, T. H., and Frank J. Hennessy, U. S. Atty., of San Francisco, Cal.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order of the District Court for Honolulu discharging a writ of habeas corpus brought by a Chinese alleging himself to be a natural-born citizen of the United States, illegally detained by the Honolulu immigration authorities. His petition shows that in 1933 he left the Islands for China, and on his return in 1936 the Board of Inquiry denied him permission to enter, and ordered him returned to China.

The record shows that in 1922 petitioner was admitted at Honolulu as a native-born citizen, who left for China in 1909 at the age of 5 years. In 1933, contemplating a temporary absence from the United States,

he applied for a "Certificate of Citizenship—Hawaiian Islands," a local form of return certificate, giving in support of his application the same evidence on which he had been admitted in 1922. The Honolulu authorities refused this certificate on the ground that other Chinese had claimed entry as sons of the same father. On appeal, however, their determination was reversed and the certificate issued to the applicant. He then left for China.

Three years later he returned and sought entry and was held for hearing by the Board of Inquiry. They refused him admission, and their determination was upheld by the Secretary of Labor and the District Court.

The testimony given by Yong Yung See at the hearing for original admission in 1922 is not in the record, but the Board concedes that his present testimony is in accord with that given by him and his witnesses in 1922.

His testimony is that he was born in Honolulu near the railroad depot in 1904. His father was Yong Tuck, alias Yong Kong Fat. His mother is Lee Shee, 62 years of age, now living in China. He has two brothers and one sister. His father was a blacksmith, and died at the age of 40 in October or November, 1907, in the house near the railroad station. He was buried in Manoa cemetery, and in 1917 his remains were disinterred and returned to China. His father was not married more than once.

The records of the Board of Health show that a Yong Tuck died, age 40, on September 15, 1907, on King street, near the railroad station, and that he was buried in Manoa cemetery. The records of Manoa show the burial, and show that a permit to disinter was issued in 1917. The records of the Board of Health from October 1, 1905, to April 21, 1909, were searched in this case, and there is no record of the death of a Yong Tuck other than the one indicated. There is no record of the death of a Yong Kong Fat. The complete interment records of Manoa cemetery from June, 1893, to December, 1910, were searched, and there is no record of the burial of a Yong Tuck other than the one indicated.

It is thus seen that the vital records of Yong Tuck correspond in almost every particular with appellant's testimony as to his father Yong Tuck, from which, and from the absence of record of any other Yong Tuck, the Board of Inquiry concluded that unless appellant substantiated his relationship with the Yong Tuck mentioned, he has not proved his birth in Hawaii.

By obtaining his original admission, his subsequent certificate of citizenship, and by his own testimony, Yong Yung See has made out a strong prima facie case. However, there exists sufficient evidence against him to require an affirmance of the order of the District Court.

On March 4, 1935, one Yong Bing Cheong applied for admission at Honolulu, claiming to be the son of Yong Tuck. The file on Yong Bing Cheong is set out in this record, and contains the evidence upon which the present applicant is denied entry.

At the hearing in the Yong Bing Cheong case, there was the testimony of Young Dai Bong. He was a resident of Honolulu, and was the son of Yong Tuck, who died in 1907, and was buried at Manoa. The witness was born in 1902. His mother is Young Lee Shee, now living in Honolulu. His father was not married more than once, to his knowledge. He has two brothers and one sister all older than himself. None of these, nor the witness himself, was mentioned by the present applicant as his brothers or sisters.

Witness Lee Shee testified at the Cheong hearing that she had come from China to Honolulu with Yong Tuck and his first wife, who was named Leong Shee. By his first wife he had two sons and a daughter (the same which Yong Dai Bong testified were his older brothers and sisters). Witness Lee Shee lived with Yong Tuck for several years prior to 1900. In 1900 his wife Leong Shee returned to China and died there. In approximately 1900, Yong Tuck married again, this time Lee Shee, and by her he had one child only, the Young Dai Bong who had previously testified in the case. He never had any other but the four children, and he never adopted a child. The witness thinks Yong Tuck died on King street near the railroad station. Ten years after his death the remains were shipped to China.

Witness Lee Shee testified that she was the second wife of Yong Tuck and had one son, Young Dai Bong. By his previous wife he had had three children (the same children as already mentioned) and he never had any others. Lee Shee accurately identified Yong Tuck, her husband, as the Yong Tuck who died in 1907 on King street near the railroad station, was buried at Manoa, and later disinterred.

It is clear that the file on Yong Bing Cheong contains evidence which, if believed, clearly refutes the hypothesis that this present applicant, Yong Yung See, was the son of the Yung Tuck whose death and burial and distinterment are recorded in the vital statistics of Honolulu. And in view of their search of the records, the Board was justified in finding that there was not another Yong Tuck who died at the same time, place, and age, was buried in the same cemetery, and disinterred the same year, yet who was not to be found in the records.

Appellant claims that the government must prove that the original admission and the certificate of citizenship were procured by fraud before it can make a determination contrary to them.

We have recently had occasion to consider the pertinent statutes and authorities determinative of an alleged citizen's right to enter the United States after a previous determination of citizenship. Chun Kock Quon v. Proctor (C.C.A.) 92 F.(2d) 326, decided September 28, 1937. In that case we held that a person of Oriental extraction claiming a right to enter the country as a citizen, must sustain the burden of proof of citizenship; that a previous adjudication in his favor makes out a prima facie case, particularly strong where, as here, the applicant's testimony on his exclusion hearing agrees with his testimony at the time of his original admission. We did not hold that the government, in order to impeach the original admission, must show fraud by direct evidence. We did hold that a determination contrary to the previous determination of citizenship must have some credible evidence to support it.

In the case of Chun Kock Quon v. Proctor, supra, we cited authorities to the effect that the Board of Inquiry may find facts upon hearsay and other evidence incompetent in a judicial hearing, subject to the limitation that its deliberations and determination must be governed by "the fundamental principles of justice embraced within the conception of due process of law." Tang Tun v. Edsell, 223 U.S. 673, 682, 32 S.Ct. 359, 56 L.Ed. 606. We repeated the language of Mr. Justice Clarke in Kwock Jan Fat v. White, 253 U.S. 454, 464, 40 S. Ct. 566, 64 L.Ed. 1010, that "It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country."

In the Chun Kock Quon Case, we found that the Board of Inquiry had deliberated in a manner manifestly prejudiced and unfair; that it damned as unworthy of belief witnesses who were not before it and whose recorded testimony showed no trace of perjury or impeachment of any kind; that it refused to give any weight to a previous determination of citizenship. Apart from the obviously arbitrary character of the hearing, we held that a prior determination of citizenship was not overthrown by the fact that other unrelated Chinese had claimed the applicant's father as their father; nor by the fact that one of the applicant's witnesses had been impeached as to his credibility in an entirely separate case.

The situation before us differs materially from the Chun Kock Quon Case. Here there is affirmative evidence that Yong Tuck was not the father of this applicant. It did not consist of testimony of other applicants seeking entry as children of the same father. It was given by Yong Tuck's wife and son, and of a friend who had accompanied Yong Tuck from China to Hawaii with his first wife, who had known both his wives and all of his children. These witnesses were eminently qualified to know the facts and, what is more important, they were all citizens of the United States, present in the United States, and had no interest in the result of the case in which they testified. The fact that this testimony, although hearsay, was given under oath by presumably unbiased witnesses, adds to its probative value. If believed, it clearly refutes the prima facie case made by the applicant.

Unlike the record in the case of Chun Kock Quon, supra, we find no evidence in the record before us to show that the Board of Inquiry conducted the hearing or reached its determination in an arbitrary, unfair, or prejudicial manner. Such being the case, its findings on competent evidence are not subject to review.

In so holding, we do not wish to be understood as fully satisfied with the practice of impeaching a prior determination of citizenship by hearsay testimony from another case, if the witnesses in such case are available for the instant hearing. However, it is not shown that the three witnesses in the Yong Bing Cheong case were available for this inquiry. Furthermore, their statements were called to the attention of the present applicant, and he indicated

no desire to have them testify in this hearing. Under these circumstances we cannot hold that the failure to produce them rendered the hearing arbitrary or unfair, or inconsistent with "the fundamental principles of justice embraced within the conception of due process of law."

Affirmed.