**HOM ARK v. CARR, District Director of Naturalization and Immigration.**

No. 9088.

Circuit Court of Appeals, Ninth Circuit.

July 11, 1939.

608

You Chung Hong, of Los Angeles, Cal., for appellant.

Ben Harrison, U. S. Atty., and Maurice Norcop, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant, Hom Ark, sought admission to the United States as a citizen thereof. His case was heard by a board of special inquiry appointed under § 17 of the Immigration Act of February 5, 1917, c. 29, 39 Stat. 887, 8 U.S.C.A. § 153. The board determined that appellant was not a citizen and should not be admitted. That determination was upheld by the Secretary of Labor. Appellant then applied for a writ of habeas corpus and, from an order denying the writ, has appealed to this court.

Appellant's claim of citizenship is based on § 1993 of the Revised Statutes, 8 U.S.C. A. § 6, which provides: "All children born out of the limits and jurisdiction of the United States, whose fathers may be at the time of their birth citizens of the United States, are declared to be citizens of the United States; but the right of citizenship shall not descend to children whose fathers never resided in the United States."

Appellant was born in China and claims to be the son of Hom Chuie. Hom Chuie is, and has been all his life, a citizen of the United States, but never resided in the United States until February 8, 1921. Hence, to establish appellant's claimed citizenship, it was necessary to prove, not merely that Hom Chuie was appellant's father, but that appellant was born on or after February 8, 1921. Weedin v. Chin Bow, 274 U.S. 657, 660-675, 47 S.Ct. 772, 71 L.Ed. 1284.

On this subject, appellant offered no testimony except that of himself and his alleged father, Hom Chuie. They both testified that appellant was born on February 22, 1921. What their testimony was based on, is not apparent. It obviously was not based on personal knowledge. Appellant, of course, could not actually know the exact date of his own birth. On the claimed date, February 22, 1921, Hom Chuie was in the United States. Therefore, he could not know that appellant—admittedly born in China—was born on that date.

The hearing before the board was on May 10, 11 and 12, 1938. Appellant was personally present and testified on each of those days. On May 11, 1938—at which time, according to his and Hom Chuie's testimony, appellant was 17 years, two months and 20 days old—appellant was examined by Drs. C. A. Smith and J. G. Evans, of the United States Public Health Service, who thereupon issued the following certificate, which was put in evidence and became part

of the record: "We have this day examined [appellant], and it is our opinion that said man is at least twenty years of age. This opinion is based on the following facts. X-rays of the humerus show that the lateral and medical epicondyles and the trochlea and capitulum have united with the body of the humerus. The upper and lower epiphyses of the radius are fused with the body."

Called as a witness, Dr. Evans testified as follows:

"Q. Will you state in your own words how you arrived at the opinion that [appellant] is at least 20 years of age? A. X-rays of the humerus show certain bony changes at different ages. In this case X-rays of the humerus show that the lateral and medial epicondyles and the trochlea and capitulum have united with the body of the humerus. The upper and lower epiphyses of the radius are fused with the body. These changes take place at the twentieth year and our opinion is based on this fact, that [appellant] is at least 20 years of age.

"Q. Is it an established fact that the changes which you have stated above would not have occurred in a person under 20 years of age? A. According to the leading anatomists they would not.

"Q. Do physicians accept that as being a definite established fact? A. All reputable physicians do."

The board concluded that appellant was born prior to February 8, 1921, and that, therefore, he was not a citizen and should not be admitted. Appellant was so notified. Subsequently, however, the case was reopened, and the following letter, addressed to appellant's attorney and signed by Dr. C. V. King, roentgenologist, of Los Angeles, California, was put in evidence:

"I have today examined some X-ray films of the right wrist and right elbow, at your request, which were taken of [appellant] on May 11th, 1938, by Dr. Albert Allen of San Pedro, California. * * *

"These films both show a stage of development which should be expected in a person about 20 or 21 years of age. However, it must be borne in mind that the bones of some individuals develop more than usual and epiphyseal lines may be obliterated at an age several years sooner than expected. Such development is not very unusual and, indeed, I have examined today another individual in whom there was no question of the age chronologically and yet the bones of the wrist were well ossified to the point commonly seen in a child at least 7 or 8 years of age, although this child was only five years of age.

"Accordingly, I feel that the evidence of the true age of the individual is not always conclusive and a variance of 5 or 6 years might be allowed in a person past the age of adolescence. In this particular instance it might be well to have X-ray pictures of other bones which might not confirm the evidence at hand, but even should the results be similar some allowance should be made for individual variations and I believe that this person may actually be no more than 17 years of age."

Appellant's attorney was requested to produce Dr. King as a witness before the board, but refused, on the ground that Dr. King was too busy, and that the cost would be too great.

The X-ray pictures referred to in Dr. King's letter were those referred to by Drs. Smith and Evans in their certificate. These pictures were made by Dr. Albert Allen, a roentgenologist employed by the United States Public Health Service. Dr. Allen was called as a witness and testified as follows:

"Q. I show you two X-rays which were made in your office. * * * Would you be kind enough to examine the X-rays and state in your opinion what the least age the person would be? A. I think about 20 years old.

"Q. The attorney for [appellant] has submitted these X-rays to [Dr. King], who has submitted the [above mentioned] letter. * * * I will ask you to read the letter and state whether or not the statements contained therein are true. A. It is possible for this to be true.

"Q. Have you known facts of this kind to be true in your own experience? A. It does not happen very often, but sometimes the bone age may be advanced or retarded due to endocrine disorders.

"Q. Dr. King has stated in his letter * * * that he * * * examined an individual whose wrist bones were ossified although the child was but five years of age. Would that same be true at the advanced age of between 17 and 20? A. I don't think that would be a parallel case at all. That is an entirely different age period.

"Q. Is there any further comment you would like to make, doctor, regarding the

X-rays or the opinion of Dr. King? A. If you don't find any evidence of the endocrine disorders I would say that the bone ages are probably correct. These disorders are usually evident on the face of it.

"Q. If there was any advancement or retardment as you have above stated then the disease you mentioned would be present, is that correct? A. It could be demonstrated by a metabolism test. If they are not present then that bone age is probably correct.

"Q. Would you desire to see [appellant] in person? A. I am only testifying according to the X-rays. I would have to have other tests made, such as a metabolism test.

"Q. But in your opinion these X-rays probably indicate the correct age, is that correct? A. Yes, I think so. Those things are very unusual.

"Q. Would you recommend that [appellant] be given a metabolism test? A. Yes, in view of this letter which has been written. If the metabolism test is normal they could not say that it is hyper or hypothyroid."

Thereupon, Dr. Smith, who, with Dr. Evans, had examined appellant on May 11, 1938, was called as a witness and was shown Dr. King's letter and the testimony of Dr. Evans and Dr. Allen mentioned above. Dr. Smith then testified as follows:

"Q. * * * Before asking any question, Dr. Smith, would you care to reexamine [appellant] at this time? A. He was given a thorough examination when he was in the office. I remember the case thoroughly and it is not necessary that I see him again.

"Q. In your own words will you comment upon the evidence you have just read and state whether or not in your opinion [appellant] could be less than twenty years of age? A. When [appellant] was examined the possibility of an endocrine disorder was thought of before ordering any X-rays for the purpose of proof of his age and there were no clinical symptoms of an endocrine disorder of any kind. The usual endocrine disfunction which causes premature ossification is hyperpinealism and there are no clinical findings of this condition. No objective or subjective findings of any other endocrine disorder could be demonstrated. In this age period, X-rays are usually definite to establish the age and I do not believe that a variation of four years

is possible in this case. It is still my opinion that the applicant is at least twenty years of age since no clinical evidence can be found of any factors tending to change the bony development."

No further evidence was taken. The board again concluded that appellant was born prior to February 8, 1921, and that, therefore, he was not a citizen and should not be admitted. The Secretary of Labor affirmed the board's decision and ordered appellant deported to China. This proceeding followed.

■ Appellant contends that the board's rejection of appellant's and Hom Chuie's testimony that appellant was born on February 22, 1921, was arbitrary and unfair. There is no merit in this contention. There were three reasons for rejecting appellant's and Hom Chuie's testimony: (1) The inherent weakness of the testimony itself, arising from the fact that it was not based on personal knowledge, and that its actual basis, if any, was not disclosed; (2) appellant's physical appearance; and (3) the testimony of Drs. Smith and Evans.

Appellant assumes, erroneously, that the board's decision was based entirely on the testimony of Drs. Smith and Evans. Appellant overlooks the fact, which the record discloses, that the examination of appellant by Drs. Smith and Evans was ordered by the board because of the board's belief, based on observation of appellant, that he was older than he claimed to be. The testimony of Drs. Smith and Evans confirmed that belief.

Appellant assumes, erroneously, that the testimony of Drs. Smith and Evans was based entirely on their examination of X-ray pictures taken by Dr. Allen. Drs. Smith and Evans examined, not only the pictures, but appellant himself. As stated in Dr. Smith's testimony, appellant "was given a thorough examination." This, together with their examination of the pictures, convinced Drs. Smith and Evans that appellant, at the time they examined him, was at least 20 years old, instead of being, as he claimed, a little over 17.

X-ray pictures are not, of course, an infallible means of determining age. No one claims that they are. Nevertheless, to a medical expert, such pictures may be a valuable aid in arriving at an opinion on that subject. Such was the use which Drs. Smith and Evans made of the pictures taken by Dr. Allen.

 The qualifications of Drs. Smith and Evans were not challenged, nor was their testimony objected to. Their testimony was, to be sure, opinion testimony, but it was not incompetent or otherwise improper. What weight it should be given was for the board to determine. We cannot review that determination nor substitute our judgment for that of the board. Wong Fook Ngoey v. Nagle, 9 Cir., 300 F. 323; Fong Lim v. Nagle, 9 Cir., 2 F.2d 971; Young Fat v. Nagle, 9 Cir., 3 F.2d 439; Tom Him v. Nagle, 9 Cir., 27 F.2d 885; Lew Git Cheung v. Nagle, 9 Cir., 36 F.2d 452.

This case is readily distinguishable from Woo Hoo v. White, 9 Cir., 243 F. 541, 543, cited by appellant. There, the question was whether the applicant was a minor. If so, being the son of a Chinese merchant, he was entitled to admission. He was excluded on the ground, among others, that there was "considerable doubt" that he was a minor. The doubt was based on a certificate of two surgeons that, in their opinion, the applicant's age was "within one year either way of 23 years." The surgeons did not testify, but merely gave their certificate. The certificate was not based on any scientific data, but merely on the applicant's "general appearance." This court said that, "Upon such a question," namely, the question of determining a person's age from his general appearance, without the aid of scientific data, "the opinion of a surgeon is believed to be of no greater value than that of a layman, and in either case it has but little probative value to show a difference of age of only two years." In the case at bar, the surgeons gave sworn testimony, based on scientific data. Consequently, what was said in the Woo Hoo case is inapplicable here.

 Appellant complains of the board's failure to order a further examination of appellant, as suggested by Drs. King and Allen. No further examination was requested by appellant. Apparently, Dr. King, who first suggested a further examination, and Dr. Allen, who concurred in the suggestion, were unaware of the extent to which appellant had already been examined by Drs. Smith and Evans. After hearing Dr. Smith's testimony that he and Dr. Evans' had already given appellant "a thorough examination," the board concluded that no further examination was necessary. It cannot be said that, in so concluding, the board acted unfairly or abused its discretion.

Whether, as contended by appellant, the evidence conclusively establishes that he is the son of Hom Chuie, we need not and do not decide, since, as stated before, that fact alone, however well established, would not entitle appellant to admission.

Order affirmed.