### KONG DIN QUONG v. HAFF, Dist. Director of Immigration, etc.

### No. 9250.

Circuit Court of Appeals, Ninth Circuit.

May 21, 1940.

Rehearing Denied July 25, 1940.

GARRECHT, Circuit Judge, dissenting.

Rehearing denied; GARRECHT, C. J., dissenting.

Stephen M. White, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan and L. R. Mercado, Asst. U. S. Attys., of San Francisco, Cal., for appellee.

Before WILBUR, GARRECHT, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appellant sought admission to the United States as a citizen thereof, basing his claim of citizenship on § 1993 of the Revised Statutes, 8 U.S.C.A. § 6, which provides: "All children born out of the limits and jurisdiction of the United States, whose fathers may be at the time of their birth citizens of the United States, are declared to be citizens of the United States; but the right of citizenship shall not descend to children whose fathers never resided in the United States." His case was heard by a board of special inquiry appointed under § 17 of the Immigration Act of February 5, 1917, c. 29, 39 Stat. 887, 8 U. S.C.A. § 153. The board determined that appellant was not a citizen and should not be admitted. The Secretary of Labor upheld the determination of the board. Appellant then applied for a writ of habeas corpus. Upon denial of the writ by the District Court, appellant appeals to this court.

Appellant was born in China and claims to be the son of Kong Ngok Wah. Kong Ngok Wah is conceded to be a citizen of the United States. The claimed father was also born in China of a native born citizen of the United States, and was first admitted to the United States on May 11, 1921. In order to establish appellant's claimed citizenship, it was necessary for him to prove his alleged relationship to Kong Ngok Wah and also that he was born on or after May 11, 1921. Weedin v. Chin Bow, 274 U.S. 657, 675, 47 S.Ct. 772, 71 L.Ed. 1284.

To support his claim, appellant offered his own testimony, that of his alleged father, and that of his alleged maternal aunt, Jung Moy Ho. The testimony of these

three witnesses was to the effect that appellant was born on December 29, 1921, approximately eight months after Kong Ngok Wah was first admitted to the United States. Thus, according to his claim, appellant would have lacked about two weeks of being 17 years of age at the time of his examination by the board of special inquiry on December 9 and 10, 1938.

At the hearing before the board of special inquiry it was decided to cause the appellant to be examined physically by medical examiners, for guidance in correctly determining his age. As a result of such physical examination, including X-rays, Dr. E. M. Townsend, Roentgenologist, certified that the applicant was probably over 24 years of age. Dr. E. C. Kading, A. A. Surgeon, U.S.P.H.S., Chief Medical Officer, Immigration Hospital, Angel Island, Calif., certified that he believed the applicant to be between 21 and 23 years of age or within one year either way of 22 years. Appellant was then given an opportunity for examination by a private physician, who submitted a statement to the effect that the appellant was "about 18 years of age". The members of the board of special inquiry expressed their opinions as to the age of appellant as follows:

"Member Sims: After carefully observing the applicant during the time he has been before the board, and judging from his general bearing, facial expression, the manner in which he has answered the questions, and his physical development, I believe him to be at least 19 years of age, American reckoning."

"Member Oberg: After carefully studying the mannerisms, attitude, bearing, demeanor and physical development of the applicant before me, I believe he is between 18 and 20 years of age—surely not younger than 18 years of age, American reckoning, and probably slightly older."

"By Chairman: After questioning this applicant during the examination, and noting his attitude, the timber of his voice, his demeanor and other points of observation, I am of the opinion that this applicant is between 19 and 20 years old, American reckoning."

When the alleged father originally applied for admission to the United States in April, 1921, he claimed one son, whose name he gave as Kong Yee Gwong, then two years of age, Chinese reckoning. When preinvestigated in 1925, incident to a trip which he was about to make back to his home, he claimed two sons, Kong Yee Gwong of the age of six years, and Kong Din Gwong, of the age of five years (Chinese reckoning). Upon returning from that trip two years later he gave the birth date of the older son, Kong Yee Gwong, as "C.R. 9–10–5" (November 15, 1920) and of Kong Din Gwong as "C.R. 10–12–1" (December 29, 1921). Appellant now argues that considering the testimony of appellant, his alleged father and his alleged aunt, and further considering the fact "that appellant's age as claimed by and for him has been recorded in the files of the immigration department for approximately thirteen years" it would be arbitrary and unfair to reject such evidence.

We do not deem it necessary to discuss in detail the medical reports upon which the physicians based their estimates as to the appellant's age. This court in the case of Hom Ark v. Carr, 1939, 9 Cir., 105 F.2d 607, decided that testimony such as that before the board in the instant case was sufficient to sustain the finding of the board that the applicant was over the age claimed for by him. We quote from the last cited case language which is apropos in the instant case (105 F.2d at page 610): "Appellant assumes, erroneously, that the board's decision was based entirely on the testimony of Drs. Smith and Evans. Appellant overlooks the fact, which the record discloses, that the examination of appellant by Drs. Smith and Evans was ordered by the board because of the board's belief, based on observation of appellant, that he was older than he claimed to be. The testimony of Drs. Smith and Evans confirmed that belief."

Appellant relies strongly on the undisputed fact that appellant's claimed father was born on September 11, 1902, and hence was only 36 years of age at the time of the hearing in question. It is urged that in order to accept the findings of the medical examiners, it would mean a finding that the claimed father was from 12 to 15 years of age at the time of appellant's birth. The simple answer to this argument, however, lies in the fact that the claimed father himself admitted that he had a son born on November 15, 1920, over a year prior to the claimed birth date of appellant. The finding of the board was not that the appellant was 24 years of age, but rather that "the applicant is considerably older than the claimed age and that he was born prior to May 11, 1921."

It might well be that the board believed that the appellant was in fact the claimed father's first born son. In this connection, we note the following excerpt from the proceedings before the board:

"Q. [to appellant] How many children has your father ever had? A. 4 sons; no daughters.

"Q. Describe them. A. Kong Yee Quong, 19 years, living at Ping San Village. I am the second; Kong Foon Quong, 13, now at Ping San Village; Kong Chun Quong, 11, now at Ping San Village.

"To Interpreter:

"Q. When I asked the question 'Describe them' in what manner did you ask the question and what was the applicant's answer? A. I told the applicant to describe his oldest brother and he said, 'Did you mean the second one.' Then he seemed to 'wake up' and gave the name of the first one, and then gave the rest along the line.

"Q. Was he paying attention to you when you asked the first question, to name the oldest brother? A. Yes.

"Q. What did you mean by the term, 'Wake up'? A. He realized what he was saying and then changed.

"To Applicant:

"Q. What did you mean by answering the first question of the interpreter as to the name of your oldest brother, by stating 'Did you mean the second one'? A. I don't know why I did that.

"Q. Is that the only explanation you have to offer? A. Yes."

It cannot be said that the board acted unfairly or abused its discretion.

Order affirmed.

GARRECHT, Circuit Judge (dissenting).

Kong Din Quong appeals from an order denying his petition for writ of habeas corpus. Petitioner arrived at San Francisco November 9, 1938, on the S.S. Coolidge and sought admission into the United States as the son of a citizen of the United States. He was born in China and is of the Chinese race. The appellant's alleged father, Kong Ngok Wah, was born in China and entered this country on May 11, 1921, as the son of a native. We believe the relationship between the appellant and Kong Ngok Wah may be taken as established; nevertheless, under the law, it was necessary for appellant to prove that

he was born after his father entered the United States in order to be entitled to admission as a son of a native. 8 U.S.C.A. § 6, 34 Stat. 1229, 48 Stat. 797; Weedin v. Chin Bow, 274 U.S. 657, 675, 47 S.Ct. 772, 71 L.Ed. 1284.

At the time the alleged father of appellant first entered the United States on May 11, 1921, he claimed one son, whose name he gave as Kong Yee Gwong, then two years of age, Chinese reckoning. When pre-investigated in 1925, incident to a trip which he was about to make to China, he claimed two sons, Kong Yee Gwong, aged six years, and Kong Din Gwong (Kong Din Quong), aged five years, Chinese reckoning. Returning from that trip two years later he gave the birthdate of Kong Yee Gwong as November 15, 1920, and of Kong Din Quong as December 29, 1921. If we assume that the latter is the same person as the appellant and the date of birth is the true date, the appellant would be entitled to admission, having been born after the father entered the United States. It was, therefore, necessary for the applicant on the day of his arrival in the United States to prove that he was not over 17 years, 5 months, and 28 days of age. The members of the Board of Special Inquiry were jointly of the opinion that the applicant was about 19 years of age—which would necessitate his exclusion—and apparently suspected him to be Kong Yee Gwong rather than Kong Din Quong, as claimed.

Assistance in determining the applicant's age was sought from medical men. Dr. E. C. Kading, Medical Examiner at the Port of San Francisco, after examining the applicant was of the opinion that he was between 21 and 23 years of age; a Dr. E. M. Townsend, roentgenologist, aided by X-ray films of the applicant's elbows and knees, arrived at the conclusion that he was over 24 years of age. Dr. Divanovich, who examined the applicant at the request of his counsel concluded that the age was about 18 years. The applicant himself gave the date of his birth as December 29, 1921. The alleged father testified at the hearing that he had four sons and no daughters —the eldest, Kong Yee Gwong, was born November 15, 1920, and the next, Kong Din Quong, the applicant, was born December 29, 1921. The two others' ages are not here material. He said that when he first entered the United States he had one son and that the applicant was born after the witness's arrival here. Jung Moy Ho,

aunt by marriage of Kong Din Quong, also appeared as a witness.

The sole question is whether the immigration officers acted arbitrarily and unfairly in relying upon the opinions of medical experts and members of the Board of Special Inquiry on the question of age to exclude the appellant.

We have repeatedly said that ordinarily it is not for this court to weigh the evidence in this class of cases, since that function is delegated to the administrative agents of the Government. However, should these administrative officers abuse the power, if their decision be the result of caprice, or be arbitrary or unreasonable, then this court has the power and the duty to correct such abuse.

In the absence of authentic and reliable birth records proof of age is difficult to establish. It is common experience that the appearance of a person is very deceiving in estimating age; some people mature earlier than others; some appear older than they really are, others younger. Then, there seems to be a general suspicion that people are older than they say. This vagueness and uncertainty is augmented in the case of persons of another race, born and reared in another part of the world, subject to a different climate, diet and environment. An order of exclusion based upon a slight difference between the age claimed and the age suspected or guessed at would be unreasonable. See Lew Git Cheung v. Nagle, etc., 9 Cir., 36 F.2d 452, 453; Woo Hoo v. White, 9 Cir., 243 F. 541, 543. Cf. Weedin v. Yeung Bon Lip, 9 Cir., 43 F.2d 465, 466, and Ng Mon Tong v. Weedin, 9 Cir., 43 F.2d 718. This court said in Lew Git Cheung v. Nagle, etc., 9 Cir., 36 F.2d 452:

"* * * The sole ground for exclusion was that the appellant appeared to be some years older than he claimed. * * * This question has been presented to this court in a number of cases under varying circumstances and with varying results. [Cases cited.]

"Naturally the value of an opinion of this kind depends upon the circumstances. The age of one of tender years is undoubtedly susceptible to a more accurate and dependable estimate than that of a mature person. Also, if one claims to be of a certain age and the estimate, reasonably based upon his appearance and physical characteristics, is higher or lower not by only one or two but many years, it may have a very substantial weight, whereas, if the discrepancy is only slight, the estimate would have but little value. * * *"

The applicant testified before the board, as did his aunt by marriage, Jung Moy Ho, who said that Kong Din Quong was the second child in his family; that he was born December 29, 1921; that she first saw him when he was one year old; and that she lived in the same house from the time of her marriage to his father's brother until she came to the United States. The alleged father also testified, and the testimony of all three was in substantial agreement on all essential points. In addition, information given by the father on prior occasions corresponds with that given on this hearing.

On the other side we have the opinions of the Board of Special Inquiry fortified by the opinions or estimates of its expert witnesses, based upon examinations of the applicant. Strangely, or perhaps not so strangely, the opinions of the Board's experts corroborate its judgment, just as the opinion of the applicant's expert substantiates his contention. Somehow, the opinions of experts seem always to do just that. Such opinions should be given only the weight they deserve. The incredibility of the opinion of one of the experts who reported that the applicant was "an adult over 24 years of age" is well illustrated by undisputed evidence. The alleged father was born September 11, 1902, which would make him slightly over 36 years of age on the date the appellant entered the United States, November 9, 1938. The alleged mother was one year younger than the alleged father; they were married in September, 1919, and, if our calculations are correct, were of the ages of 17 and 16 years. Their first born arrived November 15, 1920, and the second December 29, 1921. If the appellant was the second son, as he contends, he would have been nearly 17 years of age on the date of his entry. Dr. Townsend would have it believed that the applicant was over 24 years of age, a difference, roughly, of more than 7 years. If we subtract 7 years from 17 and 16, we would have the alleged parents married at 10 and 9 years of age, respectively, and celebrating the birth of their first child when they were 11 and 10 years of age, and in that situation we would be presuming the applicant was the eldest child. The absurdity is at once apparent and increases as we

attempt to reconcile the testimony that the applicant is the second son.

The Board apparently reached its conclusion on the assumption that the applicant was not Kong Din Quong but his elder brother. This being the basis for the determination, in the absence of some proof or of evidence to support it, the exclusion of the applicant must be held arbitrary and unreasonable. There is nothing in the record to sustain the conclusion that Kong Din Quong is not the man he claims to be, as must be the fact if he is older than claimed. Counsel for the appellee concedes that "The immigration authorities did not find that the appellant is not the son of Kong Ngok Wah nor that the latter has no such son as was claimed by him in 1925 and 1927." A mere suspicion cannot sustain the impeaching burden of the immigration authorities. Lau Hu Yuen v. United States, 9 Cir., 85 F.2d 327, 331.

Another fact which must not be lost sight of is that here we are dealing with the exclusion of one claiming to be entitled to admission into the United States as a citizen. The exclusion of a citizen is a very serious matter (cf. Wong Bing Pon v. Carr, 9 Cir., 41 F.2d 604, 606), and the Board should be convinced its conclusion is the only true decision in the circumstances. This thought was well expressed by the Supreme Court of the United States in Kwock Jan Fat v. White, 253 U.S. 454, 464, 40 S.Ct. 566, 570, 64 L.Ed. 1010: "The acts of Congress give great power to the Secretary of Labor over Chinese Immigrants and persons of Chinese descent. It is a power to be administered, not arbitrarily and secretly, but fairly and openly, under the restraints of the tradition and principles of free government applicable where the fundamental rights of men are involved, regardless of their origin or race. It is the province of the courts, in proceedings for review, within the limits amply defined in the cases cited, to prevent abuse of this extraordinary power. * * * It is better that many Chinese Immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country." To enter a deportation order solely on the surmise of an expert on age, which is in conflict with other direct and positive testimony, is a failure to accord a fair trial. This is but another glaring instance of the application of the phrase, "A Chinaman's Chance," so aptly used by Judge Denman in Chun Kock Quon v. Proctor, 9 Cir., 92 F.2d 326, 329. The boards of inquiry and review are not solely boards to exclude applicants for admission into this country, as their actions and even decisions of some courts would at times seem to affirm. The obligation of the immigration authorities is as mandatory to establish citizenship, if it exists, as it is to exclude the applicant. Cf. Lau Hu Yuen v. United States, supra, and Chun Kock Quon, supra.

Tom Him v. Nagle, 9 Cir., 27 F.2d 885, relied on by appellee, may be distinguished in that, in addition to a substantial difference between the apparent age and the age claimed, the applicant failed to establish the necessary relationship. In Fong Lim v. Nagle, 9 Cir., 2 F.2d 971: "All the witnesses, save the three physicians who certified, on behalf of the appellant, were of opinion that he was from 4 to 10 years older than claimed, and in view of the fact that he claimed to be under the age of 16 years it cannot be said that the excluding decision is not supported by competent testimony." In Wong Fook Ngoey v. Nagle, 9 Cir., 300 F. 323, there was a difference of more than three years. There are two factors which serve to distinguish this case from Hom Ark v. Carr, 9 Cir., 105 F.2d 607: The statements made by the alleged father to the authorities in 1925 and 1927 giving the birth date of Kong Din Quong; and the testimony of the aunt by marriage, who said she knew the appellant from the time he was one year old (which, if we assume Chinese reckoning, would be from birth).

The order of the court below should be reversed.